UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA              CASE NO. 22-cr-00090

VERSUS                                JUDGE ELIZABETH E. FOOTE

MARTIN WILLIAM THOMPSON (01)          MAGISTRATE JUDGE HORNSBY
RACHEL ANN HASSELL (02)

## REPORT AND RECOMMENDATION

**Introduction**

Martin Thompson ("Thompson") and Rachel Hassell ("Hassell") are charged with conspiracy to distribute fentanyl, possession with intent to distribute heroin, and using or maintaining drug premises. Thompson is also charged with possession of a firearm in furtherance of drug trafficking. The charges arise out of an investigation by the Caddo Parish Sheriff's Office. The investigation led to a traffic stop of Hassell, who was driving Thompson's truck. Following the traffic stop, officers obtained a warrant to search a business owned by Thompson.

Before the court are two motions to suppress filed by Defendants. The motions argue that all evidence seized as a result of the traffic stop should be seized because (1) the initial traffic stop was not justified by reasonable suspicion, (2) the stop was unlawfully extended, (3) Hassell did not voluntarily consent to the search, and (4) the warrant for the business lacked sufficient probable cause. For the reasons that follow, it is recommended that the motions be denied.

**Relevant Facts**

A hearing was held on the motions.  The credible evidence at the hearing, including body cam footage of the traffic stop, established the following facts.  Theresa Atkins and Tanner Raney were arrested for possession of large amounts of fentanyl, methamphetamine, and oxycodone.  Tr. 57-58.  Text messages on Atkins' cell phone revealed a drug dealing relationship between Atkins and defendant Martin Thompson.  Atkins confirmed this partnership in an interview.  Tr. 59.

Based on the information obtained from Atkins, DEA Task Force Officer ("TFO") Rickey Anderson obtained a search warrant for Thompson's cell phone.  Tr. 59.  Task force officers conducted surveillance at River City Fire Protection, a business owned by Thompson.  The officers saw Thompson's truck leave the business.  Anderson contacted Deputy Matthew Frizzell to make a probable cause stop of the truck.  Tr. 61.  Anderson maintained surveillance during the stop.  Tr. 61.

The truck pulled into a gas station, and defendant Hassell exited the truck and went inside.  She then walked back outside and stood near a trash can, looking around.  Anderson testified that she exhibited "odd behavior" while at the gas station.  Tr. 60-61.  Hassell got back in the truck and drove away.  Frizzell caught up to the truck and observed that the tires were significantly wider than the fender flares, which is a violation of La. R.S. 32:364.  Tr. 8-9.  He initiated his lights to stop the truck, and Hassell pulled into a parking lot and stopped.  Tr. 9.

Frizzell and Hassell both immediately exited their vehicles.  Hassell walked toward Frizzell and met him between the vehicles.  Frizzell told Hassell why he stopped her.  She

said that the truck belonged to her boss, Thompson, and said that Thompson's best friend was a Shreveport police officer. She said that Thompson had been stopped before for the same violation. Tr. 10.

Frizzell asked Hassell for her license and registration. She retrieved the registration and insurance information from the truck. She told Frizzell that her driver's license had been flagged and that she did not have it. Throughout their interaction, Hassell was "amped up," talking very fast, and excitedly moving around the vehicle. Tr. 12.

Frizzell asked Hassell to stand by his patrol vehicle, and he radioed dispatch to run a driver's license check. Tr. 15. As Frizzell was waiting for a return on his checks, Hassell talked to him incessantly. Tr. 16. Frizzell entered his patrol vehicle and called Anderson to update him on the stop. Anderson recognized Hassell's name because in 2015 she had pled guilty to selling oxycodone. Tr. 62. Anderson told Frizzell to try to get consent to search the truck. Tr. 18. Dispatch radioed Frizzell and said that Hassell's license was suspended and expired in 2018. Tr. 16.

Frizzell returned to Hassell and asked her if she would consent to a search of the truck. Hassell responded that it was not her truck. Frizzell told her that since she was driving the truck, she could give consent to search. Hassell became upset and said, "I just don't want to do anything to get in trouble." Tr. 19; Gov. Ex. B, Body Cam at 13:30. Frizzell told her to calm down and said that he just wanted to check the truck. He asked if she would mind if he checked the truck, and she responded, "No." He explained that at the beginning of the stop, it appeared that Hassell did not want him near the vehicle. She responded, "Oh, you can." Gov. Ex. B at 13:53.

Frizzell had Hassell sit in his patrol car while he searched the truck. She was not cuffed, and the windows were rolled down. Tr. 30. Frizzell looked inside Hassell's purse and found bags containing several hundred blue and white pills. He suspected the pills to be fentanyl. He went back to his patrol vehicle and placed Hassell under arrest. He handcuffed her and read her Miranda rights. Tr. 20-21. Anderson arrived on the scene and interviewed Hassell. Tr. 62. Hassell said that she purchased the pills from a man named Taco Taco. She gave consent for Anderson to search her cell phone. Messages in the phone confirmed that Hassell was involved in the distribution of fentanyl. The phone showed that Hassell sent Taco Taco a picture of a cashier's check in the amount of $1,580 that was purchased by Thompson. Tr. 64. Text messages between Hassell and Thompson referred to partying and getting high. Tr. 65.

Frizzell called Thompson using a phone number provided by Hassell, but Thompson did not answer his phone. Tr. 21, 65. Anderson and TFO Jordan McCormick went to River City Fire Protection to inform Thompson of the arrest of Hassell and to tell him to make arrangements to get his truck. Tr. 66. When the officers entered the lobby of the business, which was open to the public, they immediately smelled the heavy odor of burnt marijuana. Tr. 66-67.

The officers walked around a corner and down a hallway. Thompson was in a conference room talking loudly on the phone. Tr. 67-68. The officers told him to get off the phone and told him they had a search warrant for his cell phone. They read Thompson his Miranda warnings, and Anderson seized Thompson's cell phone. Tr. 68. Anderson

asked Thompson if he would consent to a search of the office, and Thompson refused.  Tr. 69.

Thompson walked into an office, and Anderson followed.  Anderson saw two handguns sitting on a credenza in the office.  The officers and Thompson walked outside. Anderson asked Thompson if he would come with the officers to the DEA office, and Thompson agreed.  Anderson asked Thompson if he had anything illegal on him, and Thompson pulled a meth pipe out of his pocket.  Thompson then said he no longer wanted to go to the DEA office and that he wanted his attorney.  Anderson placed Thompson under arrest for possession of methamphetamine and possession of a methamphetamine pipe.  Tr. 69.

Thompson was transported to Caddo Correctional Center.  Anderson had other officers secure the business while he obtained a search warrant.  Tr. 70.  After obtaining the warrant, Anderson and the other officers searched the business.  They found 15 heroin pills, an eighth of an ounce of methamphetamine, some marijuana, drug ledgers, two handguns, and several AR-15 style rifles with silencers.  Tr. 70-71.

**The Motions to Suppress**

Defendants argue that Hassell's detention was in violation of the Fourth Amendment.  They claim the initial detention was not justified under the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968).  Defendants argue that that the extension of the traffic stop was not justified by specific and articulable facts. Defendants claim that no probable cause existed to search Thompson's truck.  Hassell argues that she did not freely and voluntarily consent to the search.

Thompson argues that officers entered his place of business and searched it without a warrant.  He argues that the warrant that was later obtained was based on information unlawfully obtained and did not contain a nexus between the probable cause and the place to be searched.  Thompson argues that the good faith exception does not apply.

**Law and Analysis**

### A.  The Traffic Stop

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)."  Allen v. Hayes, __ F.4th __, 2023 WL 2942982 (5th Cir. 2023). Under Terry, courts determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop.  Id.

A traffic stop is justified at its inception when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."  United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted).  "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."  Id.  An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is

to investigate unrelated criminal offenses.  United States v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir. 2003).

DEA TFO Rick Anderson contacted Deputy Frizzell and informed him that he had a search warrant for Martin Thompson's cell phone.  Tr. 7.  Anderson asked Deputy Frizzell to be on the lookout for Thompson's truck and to perform a traffic stop if he observed a traffic violation.  Frizzell saw the truck and began driving behind it.  He saw that the tires extended several inches beyond the fenders and fender flares of the pickup in violation of La. R.S. 32:364. Tr. 8-9. These infractions are visible on the deputy's body camera. Exhibit 2. Hassell and Frizzell discussed the distance that the tires extend beyond the fender flares, and Hassell acknowledged the violation.  Accordingly, Frizzell had reasonable suspicion to stop the truck.

### B.  Extension of the Traffic Stop

Under the second prong of Terry, an officer's actions must be reasonably related in scope to the circumstances that justified the stop.  Terry, 392 U.S. at 29.  An officer's actions are not reasonably related if the officer detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops reasonable suspicion of additional criminal activity in the meantime.  United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).  If the officer develops reasonable suspicion of additional criminal activity during the investigation of the circumstances that originally caused the stop, the officer may further detain the occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion.  Id.

An officer may examine driver's licenses and vehicle registrations and run computer checks as part of the investigation of the circumstances that originally caused the traffic stop. United States v. Pack, 612 F.3d 341, 349-350 (5th Cir. 2010). The officer may also ask about the purpose and itinerary of the occupant's trip as part of this investigation, because these questions are considered to be reasonably related in scope to the investigation of the circumstances that caused the stop. Id. An officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as the unrelated questions do not extend the duration of the stop. Id.

As soon as Deputy Frizzell approached the Silverado pickup truck, Hassell jumped out and approached Frizzell. She was noticeably "amped-up." Tr. 12.[1] Frizzell believed that she might be intoxicated by some substance based on her behavior, his training, and eight years of experience in law enforcement. Tr. 5 & 30. Hassell explained to Frizzell that her boss was best friends with a Shreveport police officer. Tr. 10. This further raised Frizzell's suspicions about Hassell's potential criminal activity.

TFO Anderson was parked close by and monitoring the radio traffic regarding the stop. Tr. 61. He recognized Hassell's name because he had previously been involved in an investigation of Hassell. In that investigation, Hassell was convicted of selling oxycodone pills. Anderson also knew that his present investigation involved the distribution of fentanyl pills from Martin Thompson's place of business. Anderson personally observed Hassell acting in an erratic manner at the Raceway gas station. Tr. 60.

---

[1] Defense counsel characterized Hassell's behavior as "chatty" during the hearing. Tr. 29-30.

Under the collective knowledge doctrine, an officer initiating a stop need not have personal knowledge of the evidence that gave rise to the reasonable suspicion so long as he is acting at the request of those who have the necessary information.  United States v. McPherson, 630 Fed.  App'x 330, 331 (5th Cir. 2016).  This collective knowledge theory may be applied so long as there is "some degree of communication" between the arresting officer and the officer who has knowledge of the necessary facts.  United States v. McPherson, 493 Fed. Appx. 330 (5th Cir. 2016).

Anderson and Frizzell both observed suspicious and erratic behavior from Hassell. Anderson had knowledge of Hassell's past and of the present fentanyl distribution investigation.  The two law enforcement officers were in close communication during the stop.  Under the collective knowledge theory, their combined knowledge and Hassell's bizarre behavior provided ample reasonable suspicion that some criminal activity was afoot.  The traffic stop was lawfully extended to further investigate this criminal activity.

## C.  Consent to Search the Truck

A consensual search is a well-settled exception to the warrant requirement.  United States v. Navarro, 169 F.3d 228, 231 (5th Cir. 1999).  In determining whether a search based upon consent is valid, the Government must prove that the search was voluntary and that the defendant consented to the search.  United States v. Jenkins, 46 F.3d 447, 451-452 (5th Cir.1995).

When Frizzell first asked Hassell whether she would consent to a search of the truck, she did not refuse.  She responded that it was not her truck, implying that she did not believe she could consent to a search of Thompson's truck.  Frizzell explained that Hassell could

consent to a search because she was the driver and sole occupant. Hassell again did not refuse consent but instead responded, "I just don't want to do anything to get in trouble!" Gov. Ex. 2 at 13:30. Frizzell told her to calm down and explained that he was just asking her if he could look. He finally asked again if Hassell "would be against me checking the vehicle?" Hassell calmly responded, "No." Frizzell told Hassell that it seemed that she did not want him to look in the vehicle, and she responded, "Oh, you can." Id. at 13:40.

Hassell was not coerced into providing consent. Deputy Frizzell was polite throughout the encounter. He made no coercive statements or gestures to push Hassell into giving consent; he merely asked and told her all he was doing was asking for consent. Frizzell provided Hassell with a clear view of the search and an opportunity to withdraw her consent to the search. Accordingly, Frizzell conducted a lawful consensual search of the vehicle.

### D. Entry into River City Fire Protection

Thompson argues that the officers committed an illegal search of his business by entering it and walking through the hallway. A defendant does not have any reasonable expectation of privacy in areas of a store where the public is invited to enter and to transact business. Maryland v. Macon, 472 U.S. 463, 469 (1985). An entry into a public lobby in order to serve court papers such as a subpoena is not the sort of governmental act forbidden by the Fourth Amendment. Donovan v. Lone Steer, Inc., 464 U.S. 408, (1984). Areas of a business open to the public are not within the enumerated items in the Fourth Amendment; therefore, no search occurs when police officers enter those areas. Patel v. City of Montclair, 798 F.3d 895 (9th Cir. 2015).

Following Hassell's arrest, the officers believed it was imperative to execute the search warrant on Thompson's phone. After multiple failed attempts to contact Thompson on the phone in an effort to summon him to the scene of Hassell's arrest to retrieve his truck, the agents traveled to River City Fire Protection. Agents opened the door to the public lobby. Tr. 66. Agents immediately noticed the odor of marijuana coming from the business. Tr. 67. They called out to Thompson but received no reply. They could hear Thompson yelling over the phone down the hall. They stepped into the hall to the first office and made contact with Thompson. Tr. 67-68. Agents then seized Thompson's phone and asked if he would accompany them to DEA offices. During this interaction, agents observed two handguns on Thompson's desk but did not seize them. Tr 68.

Law enforcement agents did not search Thompson's business before they obtained the search warrant. They entered through a lobby open to the public. They merely looked for Thompson in an effort to serve a court document—the existing federal search warrant. Upon Thompson's arrest, agents secured the building and applied for a search warrant.

### E.  Search Warrant for River City Fire Protection

Thompson first argues that the search warrant contained information from Rachel Hassell's traffic stop and should be suppressed as fruit of the poisonous tree. As explained above, the traffic stop was supported by reasonable suspicion, and the subsequent search of the truck was conducted pursuant to Hassell's voluntary consent. Accordingly, that information was validly included in the warrant.

Thompson next argues that the warrant should be suppressed because it failed to show a nexus between the purported probable cause and Thompson's business. Defendant claims that the affidavit contained a generic claim that persons involved in large-scale drug trafficking conceal in their businesses drugs, currency, and other instruments related to narcotics trafficking. Defendant argues that there is no reliable information in the affidavit for a magistrate to determine that evidence of narcotics trafficking would be found inside the business.

TFO Anderson's affidavit in support of the warrant (Doc. 57-1) alleged that DEA officers arrested Theresa Atkins and Tanner Raney for possession of methamphetamine and fentanyl. Text messages on Atkins' phone revealed that Thompson was purchasing fentanyl pills from Atkins. The affidavit contained details of the traffic stop of Hassell. She was stopped immediately after leaving River City Fire Protection and had a large quantity of suspected fentanyl pills in her possession. After being arrested, Hassell consented to a search of her cell phone. Texts between Thompson and Hassell were drug-related in nature.

Agents went to Thompson's business to serve a search warrant for his cell phone, and they immediately smelled the odor of marijuana. They saw (but did not seize) two handguns on a desk in plain view in Thompson's office. Agents seized Thompson's cell phone (pursuant to the search warrant) and read him his Miranda warnings. Thompson agreed to go with the agents to the DEA office. TFO Anderson asked Thompson if he had any illegal items, and Thompson removed a methamphetamine pipe from his pocket.

The affidavit alleged that Hassell left the business with a large quantity of drugs, the business smelled strongly of marijuana, and there were firearms in plain view in Thompson's office.  Additionally, based on his training and experience, Anderson knew that it was common for large-scale drug dealers to conceal drugs and currency in their businesses.  These facts set forth in the affidavit connected the suspected drug activity to Thompson's business.  Agents searched Thompson's business in good faith based on a valid search warrant.

Accordingly,

It is recommended that Hassell's Motion to Suppress (Doc. 54) and Thompson's Motion to Suppress (Doc. 55) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415

(5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of April, 2023.

Mark L. Hornsby
U.S. Magistrate Judge